MIDDLESEX INSURANCE COMPANY *v.*
JAMES J. QUINN III ET AL.
(14575)

PETERS, C. J., BORDEN, KATZ, F. X. HENNESSY and MENT, Js.

---

Argued January 5—decision released March 30, 1993

*John F. Wynne, Jr.,* for the appellant (named defendant).

*Frederick M. Vollono,* for the appellee (plaintiff).

*Stewart M. Casper* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

KATZ, J. The dispositive issue in this appeal is whether the defendant, James J. Quinn III, is a covered person under the terms of an automobile liability insurance policy issued by the plaintiff, Middlesex Insurance Company (Middlesex), to the defendant's father, James J.

Quinn, Jr.[1] Following the trial court's judgment vacating an arbitration award of $83,333 rendered in favor of the defendant, the defendant appealed to the Appellate Court, which affirmed the judgment of the trial court. *Middlesex Ins. Co.* v. *Quinn,* 27 Conn. App. 573, 609 A.2d 1008 (1992). We granted the defendant's petition for certification to appeal[2] to decide whether Connecticut's public policy precludes an insurer from excluding from underinsured motorist coverage, a relative of the named insured who resides in the named insured's household and who owns a car. We affirm the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following undisputed facts. "On February 12, 1984, while driving a car he owned, the defendant was injured in a collision in New Haven. The defendant recovered $20,000 from the tortfeasor, the full amount of liability insurance available. The defendant's car was insured for $100,000 bodily injury liability and $20,000 uninsured motorist coverage.

"At the time of the collision, the defendant lived with his father, whom [Middlesex] insured under two automobile liability policies covering five vehicles. Each of these vehicles was insured for $20,000 in uninsured motorist coverage. The defendant sought to aggregate these amounts and to collect $100,000 from [Middlesex]. [Middlesex denied coverage on the basis that he is not a covered person as defined in the policy.[3]] When

[1] Middlesex' application to vacate the arbitration award also named James J. Quinn, Jr., as a defendant. Only James J. Quinn III appealed. References to the defendant are to James J. Quinn III.

[2] Certification was granted limited to the following question: "Does public policy preclude an automobile insurer from excluding from uninsured motorist coverage a resident family member who owns a vehicle?" *Middlesex Ins. Co.* v. *Quinn,* 223 Conn. 908, 612 A.2d 56 (1992).

[3] The Middlesex policy issued to the defendant's father provides in pertinent part: "You, your and yourself means the person named on

[Middlesex] . . . refused to arbitrate the dispute, the defendant sought an order compelling arbitration. The trial court, *Purtill, J.,* issued such an order, which [the Appellate Court] subsequently upheld. See *Quinn* v. *Middlesex Ins. Co.,* 16 Conn. App. 209, 547 A.2d 95, cert. denied, 209 Conn. 817, 550 A.2d 1085 (1988).

"On February 1, 1991, the arbitration panel, in a two to one decision, awarded the defendant $83,333, with the plaintiff receiving $16,666.67 credit for the amount the tortfeasor had paid. The majority found that the policy's definition with respect to resident relatives [who own a car] is invalid and that the defendant is therefore a covered person under the plan. The dissent determined that the defendant is not a covered person and that our law does not require that he be covered under the circumstances of this case. On February 19, 1991, [Middlesex] moved to vacate the arbitration award. The defendant subsequently moved to confirm it. On June 7, 1991, the trial court vacated the award and denied the motion to confirm." *Middlesex Ins. Co.* v. *Quinn,* supra, 575. The defendant appealed to the Appellate Court, which affirmed the judgment of the trial court. Id., 583. This appeal followed.

The defendant claims that public policy precludes an automobile insurer from excluding from underinsured motorist coverage a resident family member who owns a car and that the defendant is, therefore, entitled to underinsured motorist benefits under the Middlesex policy issued to his father.[4] The defendant's argument

---

the declarations page and the person's husband or wife if a resident of the same household.

"You, your and yourself also means a member of the family who is a resident of the household and *who doesn't own a car* or whose spouse doesn't own a car." (Emphasis added.)

[4] The father's policy also included uninsured motorist coverage. "Under our law the statutes and regulations applicable to uninsured motorist coverage also apply to underinsured motorist coverage. . . . Because this case

is based upon the principle of public policy that an insurer may not reduce its liability for underinsured motorist coverage by contract except to the extent that the relevant regulations expressly authorize. *Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 156, 617 A.2d 454 (1992). Because no regulation expressly provides for exclusion from coverage of a resident of an insured's household who owns a car, the defendant contends that Middlesex cannot exclude the defendant from underinsured motorist benefits. We disagree.

The Middlesex policy issued to the defendant's father is an automobile liability policy that provides underinsured motorist coverage, in addition to other coverage. Under the section labeled "Liability Insurance," the insurer will "pay damages for bodily injury or property damage for which the law holds you responsible because of a car accident involving a car we insure." The policy also covers "[a]nyone using, with your permission, a car described on the declarations page, or any additional, replacement or substitute . . . ." Under the section labeled "Uninsured Motorist Insurance," the policy promises to "pay the damages you're legally entitled to receive from the owner or operator of an uninsured motor vehicle because of bodily injury. We'll pay these damages for bodily injury you suffer in a car accident while occupying a car or, as a pedestrian, as a result of having been struck by an uninsured motor vehicle." Additionally, the policy provides uninsured motorist benefits to "[a]nyone occupying, with your permission, a car we insure . . . ." The "Definitions" section at the beginning of the policy, which applies to both liability and underinsured motorist insurance, states that "You, your and yourself . . . means

involves a claim for underinsured motorist coverage, we refer herein to that coverage." *Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 153 n.1, 617 A.2d 454 (1992).

a member of the family who is a resident of the household and who doesn't own a car . . . ."

Because the defendant owns his own automobile, he is clearly not an "insured" under the unambiguous definition of an insured in the policy. The defendant does not argue to the contrary.[5] The defendant maintains, however, that this definition of limited coverage violates public policy. We find the defendant's argument unpersuasive.

Our underinsured motorist insurance statute, General Statutes § 38a-336, formerly § 38-175c, requires that "[e]ach automobile liability insurance policy shall provide insurance, herein called uninsured motorist coverage . . . for the protection of *persons insured thereunder* . . . ." (Emphasis added.)[6] The accom-

---

[5] Additionally, the defendant was not occupying an automobile insured under the policy at the time of his injury. He was not entitled, therefore, to underinsured motorist benefits as an occupant of an insured automobile.

[6] General Statutes § 38a-336, formerly § 38-175c, provides: "UNINSURED MOTORIST COVERAGE. (a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. Each insurer licensed to write automobile liability insurance in this state shall provide uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but the insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of the policy issued to the named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured.

"(2) Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after July 1,

panying regulation, § 38a-334-6 (a) of the Regulations of Connecticut State Agencies provides that the "insurer shall undertake to pay on behalf of the *insured* all sums which the insured shall become legally entitled to recover . . . ."[7] (Emphasis added.)

1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.

"(b) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(c) Each automobile liability insurance policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(d) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."

[7] Section 38a-334-6, formerly § 38-175a-6, of the Regulations of Connecticut State Agencies provides in relevant part: "MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS

"(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shall insure the occupants of every motor

Unlike the automobile liability statutes,[8] the uninsured motorist statute does not require automobile insurance policies to provide underinsured motorist benefits to any particular class or group of insureds.[9] See *Indiana Lumbermens Mutual Ins. Co.* v. *Vincel,* 452 N.E.2d 418, 424 (Ind. App. 1983). The legislature did not specifically define "insured" in the context of underinsured motorist coverage. Rather, the statute requires that underinsured motorist coverage must be provided "for the protection of persons *insured thereunder."* (Emphasis added.) General Statutes § 38a-336 (a) (1). Thus, "persons insured" in this statute refers to persons specified as insureds in the liability portion of the policy. There would be no violation

---

vehicle to which the bodily injury liability coverage applies. 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent."

[8] Automobile liability insurers are required to provide liability coverage with respect to the insured automobile for the named insured, resident relatives of the named insured and permissive users. General Statutes § 38a-335 (d); Regs., Conn. State Agencies § 38a-334-5 (d).

[9] Section 38a-334-6 (a) of the Regulations of Connecticut State Agencies does, however, require uninsured motorist coverage for occupants of an insured motor vehicle: "This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies." In light of the fact that occupants of a motor vehicle would not be insured under the driver's policy for automobile liability, § 38a-334-6 (a) requires protection for this otherwise unprotected group. Although occupants of a vehicle may have their own liability coverage, which would entitle them to uninsured motorist benefits; see *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 449 A.2d 157 (1982); the insurance commissioner has designated "occupants" as a class of persons who may receive more extensive uninsured motorist coverage.

We note that the regulation does not limit uninsured motorist coverage to occupants who do not own a car. Therefore, had the defendant been an occupant of an automobile insured under the Middlesex policy, Middlesex concedes that coverage would be mandated. See footnote 5. Indeed, Middlesex argued in this court that had the defendant been an occupant of an automobile insured under its policy, to preclude the defendant from coverage on the basis of his ownership of an automobile would have been a violation of public policy as set forth in § 38a-334-6 (a).

of public policy, therefore, unless the insurance policy specifically were to limit underinsured motorist coverage in such a way as "to [preclude] persons who would otherwise qualify as insureds for liability purposes." *Indiana Lumbermens Mutual Ins. Co.* v. *Vincel,* supra.

If the legislature intended to mandate coverage for all resident relatives of the named insured irrespective of whether they own a vehicle, it could have expressly so provided. In the absence of clear direction from the legislature, we decline to extend public policy to require insurers to cover family members who own vehicles. Presumably, the legislature has left such coverage to be provided by the policies on the vehicles owned by those family members.

This conclusion is consistent with our previous analysis and interpretation of § 38-175c, now § 38a-336, in *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 449 A.2d 157 (1982), and *Smith* v. *Nationwide Mutual Ins. Co.,* 214 Conn. 734, 573 A.2d 740 (1990). In *Harvey* v. *Travelers Indemnity Co.,* supra, we held that the plaintiff, an *insured* under his mother's automobile liability policy, was entitled to underinsured motorist benefits under that policy, even though he was occupying his father's uninsured automobile when he was injured. We concluded that the public policy embodied in § 38-175c directs that an *insured's* geographical location at the time of the injury is "irrelevant to recovery under the statutorily mandated coverage." Id., 250. Underinsured motorist coverage attaches to the *insured* person, not the insured vehicle. Id. We held that an insurance contract's exclusion to the contrary violated the public policy underlying uninsured motorist coverage in Connecticut because the statute requires every automobile liability policy to provide uninsured motorist coverage for the protection of persons insured there-

under. Because the plaintiff was an insured under the liability section of his mother's policy, the policy's exclusion of the plaintiff from uninsured motorist benefits violated public policy.

In *Smith* v. *Nationwide Mutual Ins. Co.,* supra, the plaintiff was a passenger in an automobile owned by the driver when it was involved in a one car accident. The plaintiff sought uninsured motorist benefits under a policy issued to the driver's father. The plaintiff argued that "once a policy provides liability coverage to an insured, the underinsured motorist coverage therein is coextensive with the liability coverage." Id., 736. The liability coverage section of that policy provided that " '[w]e will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident.' " Id. A "covered person" was defined in the policy as " 'you or any family member for the ownership, maintenance or use of any auto or trailer.' " Id. The plaintiff argued that under the terms of the driver's father's automobile liability policy, the driver, as a family member, was a "covered person" who became legally responsible for the plaintiff's injuries because of an automobile accident while driving "any auto." Id., 736–37. Because the father's policy provided liability coverage to the driver while using any auto, the plaintiff argued that "the policy must also provide underinsured benefits to her as an occupant of that vehicle." Id., 737.

We concluded that the driver was not a covered person under the liability section of his father's policy because the coverage excluded " 'any vehicle other than your covered auto which is owned by any family member.' " Id. We held that an insurer does not violate public policy by limiting liability coverage to particular

vehicles. See General Statutes § 38a-335 (a) and (d). Because the driver was not a "covered person" under the liability section of the policy, the insurer was not liable for the injuries he caused and the plaintiff could not recover damages under the policy. Moreover, the plaintiff was not a covered person within the definition provided in the uninsured motorist section of the policy because she was neither a family member nor an occupant of a covered automobile. We concluded that there was no violation of public policy because neither the plaintiff nor the driver was insured under the father's policy. Id., 737-41.

The public policy behind uninsured motorist coverage, therefore, requires an insurer to provide uninsured motorist benefits to any insured under the automobile liability policy. "[O]nce an automobile liability policy is issued extending [liability] coverage to a certain class of insureds . . . uninsured motorist coverage must be offered to cover the same class of insureds"; *State Farm Automobile Ins. Co.* v. *Reaves*, 292 Ala. 218, 223, 292 So. 2d 95 (1974); except as expressly excluded by statute or regulation. *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 377, 593 A.2d 498 (1991).

Other jurisdictions with statutes and regulations similar to those of Connecticut have also concluded that there is no violation of public policy if the person being denied uninsured motorist benefits is not an insured under the liability section of the policy. See, e.g., *Mathis* v. *Auto-Owners Ins. Co.*, 387 So. 2d 166 (Ala. 1980); *France* v. *Liberty Mutual Ins. Co.*, 380 So. 2d 1155 (Fla. App. 1980); *Girrens* v. *Farm Bureau Mutual Ins. Co.*, 238 Kan. 670, 715 P.2d 389 (1986); *Lewis* v. *American Family Ins. Group*, 555 S.W.2d 579 (Ky. 1977); *Robertson* v. *Cumis Ins. Co.*, 355 So. 2d 1371 (La. App.), cert.

denied, 357 So. 2d 1153 (La. 1978); *Washington* v. *Travelers Ins. Co.*, 92 Mich. App. 151, 284 N.W.2d 754 (1979); *Famuliner* v. *Farmers Ins. Co.*, 619 S.W.2d 894 (Mo. App. 1981); *Malo* v. *Aetna Casualty & Surety Co.*, 459 A.2d 954 (R.I. 1983); *Farmers Ins. Co.* v. *Miller*, 87 Wash. 2d 70, 549 P.2d 9 (1976).

Our analysis, however, does not end here. Although we have concluded that the denial of underinsured motorist benefits to a person who is not an insured within the definition of insured in the automobile liability section of the policy does not violate the policy embedded in § 38a-336, we must also examine the definition of an insured under the policy to determine if it violates public policy. An insurer cannot limit otherwise mandated underinsured motorist coverage by labeling a forbidden exclusion as a definition. We conclude that the pertinent definition in this policy does not incorporate a forbidden exclusion and, therefore, does not violate public policy.

The legislature intended to provide that every insured within the definition of that term in the liability section of the policy is entitled to recover underinsured motorist benefits for the damages " 'he or she would have been able to recover if the uninsured [tortfeasing] motorist had maintained a policy of liability insurance.' " *Streitweiser* v. *Middlesex Mutual Assurance Co.*, supra, 377. Section 38a-336 states that uninsured motorist coverage must be provided in every automobile liability policy for "the protection of persons insured thereunder." "The policy behind linking uninsured motorist coverage to liability coverage is to reward those who obtain insurance coverage for the benefit of those they might injure. Persons who are uninsured for purposes of liability coverage should not be protected by the public policy of this state from their

own kind." *Anderson* v. *State Farm Mutual Automobile Ins. Co.,* 471 N.E.2d 1170, 1175 (Ind. App. 1984); *Indiana Lumbermens Mutual Ins. Co.* v. *Vincel,* supra, 426.

The owner of an automobile is expected and required to obtain his or her own automobile insurance. General Statutes § 14-12b (a) (1). In this case, although the defendant had insurance on his car, he elected to purchase only the minimum amount of coverage. "Obviously, [Middlesex] . . . did not intend to contract with [the defendant's] father to provide liability coverage on automobiles in the [Quinn] household for which no premium had been paid, and the company unambiguously has made that intent part of the insurance contract." *Anderson* v. *Allstate Ins. Co.,* 685 F.2d 1299, 1302 (11th Cir. 1982) (interpreting Alabama law). In the absence of clear direction from the legislature, "[w]e decline to extend the public policy . . . to allow a member of a family to purchase one liability policy and claim total coverage thereunder for the entire family while vastly increasing the risk to his or her insurer by knowingly owning and operating a fleet of uninsured [or underinsured] vehicles upon the highways." *France* v. *Liberty Mutual Ins. Co.,* supra, 1156. The defendant is limited to the coverage he purchased on his own automobile.

The judgment is affirmed.

In this opinion the other justices concurred.