[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DATED FEBRUARY 16, 1998 (#123) AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DATED APRIL 16, 1998 (#125)
The plaintiff, Colonial Penn Insurance Company, ("Colonial Penn"), by substituted complaint dated October 3, 1997, instituted this subrogation action against the defendant, Patriot General Insurance Company ("Patriot General"), seeking reimbursement of uninsured motorist benefits paid to its insured, Horace Rosemond ("Rosemond"). Presently before the court is the defendant, Patriot General's, motion for summary judgment, which was filed on February 19, 1998 with a supporting memorandum. Also before the court is the plaintiff, Colonial Penn's, cross motion for summary judgment, which was filed on April 21, 1998 with a supporting memorandum.
This is a case of first impression in Connecticut. The parties agree that there are no material facts in dispute. Carmen Lugo ("Lugo") submitted an application for automobile liability insurance, dated September 10, 1994, to Patriot General, for coverage on a 1979 Oldsmobile Cutlas station wagon that she owned. In the application, Lugo disclosed that she had never been licensed to drive an automobile and that the vehicle would be driven 100% of the time by Isideo Vazquez. Lugo also executed a "Named Driver Exclusion Endorsement," specifically excluding any coverage under the policy for herself while operating the 1979 Oldsmobile. Shortly thereafter, Patriot General issued to Lugo a policy of automobile liability insurance covering the 1979 CT Page 7751 Oldsmobile.
On October 1, 1994, Lugo was operating the 1979 Oldsmobile owned by her when she was involved in an automobile accident with a vehicle being operated by Rosemond. Rosemond made a liability claim against Lugo for personal injuries suffered in the accident. Lugo's insurer, Patriot General, denied coverage for that claim based on the Named Driver Exclusion Endorsement. At the time of the accident. Rosemond had a policy of automobile liability insurance, which included uninsured and under insured motorist coverage, issued by the plaintiff, Colonial Penn. As a result of the accident and the denial on the part of Patriot General for coverage on Lugo, Rosemond made a claim against his insurer, Colonial Penn, for uninsured motorist benefits.
Thereafter, Colonial Penn made payment pursuant to its policy with Rosemond, and subsequently brought this subrogation action against Patriot General seeking reimbursement of the uninsured motorist benefits paid to Rosemond.
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." (Citations omitted.) Wilson v. New Haven,213 Conn. 277, 279, 567 A.2d 829 (1989). "[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Suarez v.Dickmont Plastics Corp. , 229 Conn. 99, 105-06, 639 A.2d 507
(1994). CT Page 7752
In the present case, Patriot General contends that the Named Driver Exclusion Endorsement in the policy executed by its insured, Lugo, bars coverage for Lugo with respect to the claim submitted by Rosemond. Relying on General Statutes § 38a-335
(d) and § 38a-334-5 (c)(8) of the Regulations of Connecticut State Agencies, Patriot General further contends that the exclusion of Lugo, the named insured, from liability coverage is valid and enforceable under our insurance statutes and regulations.
The endorsement to the Patriot General policy executed by Lugo provides in pertinent part:
This endorsement modifies your policy in the following way.
 It is hereby understood and agreed that the following person(s) is excluded from any coverages provided by this policy while operating a motor vehicle.
 Carmen Lugo 1-12-60 NAME DATE OF BIRTH
 If we are required to make any payments under this policy because of an accident which happens while a motor vehicle is being driven by the above named individual(s), you must repay us for these payments and any expenses.
 This restriction does not apply to uninsured motorist coverage and Basic or Added Reparations Benefits portions of your policy.
 By signing below both you and the excluded driver(s) agree to this change in your policy.
(Capitals in original.) (Named Driver Exclusion Endorsement, Defendant's Exhibit B.) Thus, the endorsement expressly bars coverage for Lugo with respect to the claim submitted by Rosemond.
Colonial Penn argues that if § 38a-335 (d) authorizes such an exclusion, as Patriot General claims, then that section of the General Statutes is in direct conflict with General Statutes §§ 14-12b, 14-112, 38a-334, 38a-335 (a) and 38a-371
(a)(1). CT Page 7753
Public Acts 1985, No. 85-13, codified as General Statutes § 38a-335 (d), provides in pertinent part: "With respect to the insured motor vehicle, the coverage afforded under the bodily injury liability and property damage liability provisions in any such policy shall apply to the named insured and relatives residing in his household unless any such person is specifically excluded by endorsement."
Similarly, § 38a-334-5 (c)(8) of the Regulations of Connecticut State Agencies provides in pertinent part: "The insurer's obligation to pay and defend may be made inapplicable . . . to the operation of a motor vehicle by an individual or individuals specifically named by endorsement accepted by the insured. . . ."
The portion of General Statutes § 38a-335 (d) at issue in the present case states "such policy shall apply to the named insured and relatives residing in his household unless any such person is specifically excluded by endorsement."[1] (Emphasis added.) The word "and" is "[a] conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first."[2] In addition, the word "any" is "too comprehensive a word to receive a narrow construction."[3]
The legislature could have formulated the statute to require coverage to apply "to the named insured and resident relatives residing in his household unless any such relative is specifically exclude by endorsement[,]" but it did not choose to do so. Thus, the plain language of General Statutes § 38a-335
(d) clearly and unambiguously permits the exclusion by endorsement of the named insured and/or resident relatives residing in his or her household. "When language used in a statute is clear and unambiguous, its meaning is not subject to modification or construction. . . . Absent ambiguity, the courts cannot read into statutes, by construction, provisions that are not clearly stated." (Citations omitted; internal quotation marks omitted.) Middlesex Ins. Co. v. Rady, 34 Conn. App. 679, 682,642 A.2d 1217, cert. denied, 231 Conn. 908, 648 A.2d 154 (1994).
This interpretation of the statute is rational and reasonable. There is no requirement in Connecticut that a person be a licensed driver to own a motor vehicle. Additionally, many unlicensed persons who own vehicles, including those who are elderly, handicapped or have had their licenses revoked, benefit by having others operate their vehicles. Thus, it would be unreasonable to require an insurer to provide liability coverage CT Page 7754 to the unlicensed owner of a vehicle who has expressly excluded himself or herself by endorsement and represented that other persons will operate the vehicle one hundred percent of the time.
Colonial Penn's principal argument is that General Statutes § 38a-335 (d) is inconsistent with General Statutes §38a-371 (a)(1). General Statutes § 38a-371 (a)(1), provides in pertinent part: "The owner of a private passenger motor vehicle required to be registered in this state shall provide and continuously maintain throughout the registration period security in accordance with sections 38a-334 to 38a-343, inclusive." Because General Statutes § 38a-371 (a)(1) requires "security in accordance with sections 38a-334 to 38a-343, inclusive[,]" it incorporates § 38a-335 (d). Nothing in the plain language of, General Statutes § 38a-371 (a)(1) expressly precludes the owner of a motor vehicle from obtaining security and then specifically excluding by endorsement the named insured and/or relatives residing in his or her household. Accordingly, no inconsistency exists between General Statutes § 38a-371 (a) (1) and § 38a-335 (d).
Colonial Penn also cites General Statutes § 14-12b, which provides in pertinent part: "No motor vehicle registration shall be issued by the commissioner for any private passenger motor . . . unless (1) the application for registration is accompanied by a current automobile insurance identification card or a copy of a current insurance policy or; endorsement issued by a company licensed to issue such insurance in this state . . . verifying that the applicant has the required security coverage and (2) the applicant signs and files with the commissioner . . . a statement on a form approved by the commissioner that the owner of the vehicle has provided and will continuously, maintain throughout the registration period the minimum security required by section 38a-371." Nevertheless, as stated above, nothing in General Statutes § 38a-371 (a)(1) precludes the owner of a motor vehicle from obtaining security and then specifically excluding by endorsement the named insured and/or relatives residing in his or her household. Accordingly, no inconsistency exists between General Statutes § 14-12b and § 38a-335
(d).
Colonial Penn also cites General Statutes § 14-112 as part of a consistent scheme of mandatory minimum automobile insurance. General Statutes § 14-112, however, is inapplicable to this action, because it applies only to persons CT Page 7755 attempting to either "receive or retain a motor vehicle operator's license or a certificate of registration of any motor vehicle" after they have violated certain rules of the road.
Colonial Penn also cites § 38a-334-5 (a) of the Regulations of Connecticut State Agencies, which provides in pertinent part: "The insurer shall undertake to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage caused by accident and arising out of the ownership, maintenance or use of a motor vehicle owned or long-term leased by the named insured." According to Colonial Penn, this regulation demonstrates the legislature's "intent that coverage be afforded in the situation present in the instant case." (Plaintiff's Memorandum, p. 10.) Colonial Penn's argument, however, is unpersuasive, because the express language of this regulation provides that: "The insurer's obligation to pay and defend may be made inapplicable . . . to the operation of a motor vehicle by an individual or individuals specifically named by endorsement accepted by the insured. . . ." Regs., Conn. State Agencies § 38a-334-5 (c)(8).
Colonial Penn also cites General Statutes § 38a-334 (a), which provides that: "The Insurance Commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies[,]" and General Statutes § 38a-335 (a), which provides that: "Each automobile liability insurance policy shall provide insurance in accordance with the regulations adopted pursuant to section 38a-334. . . ."
Neither General Statutes § 38a-334 nor § 38a-335 (a) directly conflicts with § 38a 335(d). Under § 38a-334-5
(c)(8) of the Regulations of Connecticut State Agencies, adopted by the Insurance Commissioner, "a resident-relative, and even a `named insured,' may be excluded from policy coverage." See J. Berk M. Jainchill, Connecticut Law of Uninsured and Under insured Motorist Coverage (Supp. 1997) § 2.6.1, p. S-49. Thus, the endorsement in the liability policy issued to Lugo validly excluded her from policy coverage in accordance with the express language of General Statutes § 38a-335 (d) and, §38a-334-5 (c)(8) of the Regulations of Connecticut State Agencies.
Colonial Penn also relies on Middlesex Ins. Co. v. Quinn,225 Conn. 257, 622 A.2d 572 (1993), and Middlesex Ins. Co. v. Rady, CT Page 7756supra, 34 Conn. App. 683, to support its contention that excluding from coverage a motor vehicle owner operating the insured motor vehicle violates public policy, but both cases are distinguishable. Those cases held that when liability coverage is extended to a certain class of insureds, uninsured motorist coverage must be offered to cover the same class of insureds. SeeMiddlesex Ins. Co. v. Quinn, supra, 225 Conn. 267; Middlesex Ins.Co. v. Rady, supra, 34 Conn. App. 683. By contrast, the endorsement in the policy issued to Lugo excludes her from liability rather than uninsured motorist coverage.
In conclusion, nothing in the plain language of General Statutes §§ 14-12b, 14-112, 38a-334, 38a-335 (a) and 38a-371
(a)(1) or in any cases cited by Colonial Penn supports its contention that these statutes directly conflict with § 38a-335
(d). Thus, the endorsement in the liability policy issued to Lugo validly excluded her from liability coverage in accordance with the express language of General Statutes § 38a-335 (d) and § 38a-334-5 (c)(8) of the Regulations of Connecticut State Agencies. Therefore, Patriot General's motion for summary judgment is granted and that Colonial Penn's cross motion for summary judgment is denied.
MORAN, J.